**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL SEGAL,<br><br>   *Plaintiff*,<br><br>  v.<br><br>BRIAN BROOK, ESQ., and CLINTON BROOK & PEED,<br><br>   *Defendants*. | Civil Action No. 20-3110<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

  Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants Brian Brook, Esq., and Clinton Brook & Peed seek to dismiss the Complaint, which asserts malpractice claims against Defendants. D.E. 3. Plaintiff Michael Segal filed a brief in opposition, D.E. 5, to which Defendants replied, D.E. 6.[1] The Court reviewed the parties' submissions and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion to dismiss is **DENIED**.

  **I. FACTUAL AND PROCEDURAL BACKGROUND**

  Plaintiff Michael Segal was the sole owner of High Crest Functional Medicine, LLC ("HCFM") and non-parties in this matter, Neelendu Bose and Stephanie Bose were the

---

[1] Defendants' brief in support of their motion to dismiss (D.E. 3-2) will be referred to as "Defs. Br."; Plaintiff's opposition brief (D.E. 5) will be referred to as "Plf. Opp."; and Defendants' reply brief (D.E. 6) will be referred to as "Defs. Reply."

owner/operators of High Crest LLC ("HC").[2]  Compl. ¶¶ 8, 10.  HCFM provided medical services to patients.  HCFM and HC had a management services agreement through which HC provided administrative services to HCFM.  The administrative services included the implementation of a payment process, administration of a collections system, and medical billing.  *Id.* ¶¶ 14-15.  In 2012, HCFM and HC filed a complaint against Horizon Blue Cross Blue Shield ("Horizon") and other entities alleging that HCFM and HC were harmed by Horizon's underpayments to out-of-network providers (the "First Action").  *Id.* ¶¶ 16-17.  Horizon asserted counterclaims alleging that HCFM and HC (among others) were involved in an unlawful scheme to defraud Horizon.  Horizon alleged, among other things, that HCFM and HC were involved in the unauthorized practice of medicine; had submitted ineligible claims for services rendered; and had submitted claims for services that were never rendered, were not medically necessary, or that misrepresented a diagnosis.  *Id.* ¶¶ 18-21.  On or about December 31, 2013, Segal left HCFM.  *Id.* ¶ 22.  Plaintiff contends that Neelendu, through HC, continued to maintain HCFM's medical records for billing and appeals.  *Id.* ¶ 23.

After HCFM and HC's initial attorney in the First Action filed a motion to withdraw in July 2015, Plaintiff, HCFM, Neelendu and Stephanie Bose, and other entities in the First Action retained Defendants to represent them.  *Id.* ¶¶ 24-26.  Defendants filed a notice of appearance in the First Action on October 1, 2015.  *Id.* ¶ 26.  In December 2015, the plaintiffs in the First Action filed a second suit against Horizon (the "Second Action") and on January 5, 2016, they voluntarily dismissed the First Action.  *Id.* ¶¶ 29, 30.  Horizon subsequently filed counterclaims in the Second Action that "mirrored the [counter]claims in the First Action."  *Id.* ¶¶ 32-35.

---

[2] The factual background is taken from Plaintiff's Complaint.  D.E. 1-2.  When reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

In this matter, Plaintiff alleges that Defendants failed to advise him of the conflict of interest that arose through Horizon's counterclaims in the underlying litigation. *Id.* ¶¶ 21, 37. Plaintiff further alleges that even if the conflict was not apparent from the pleadings alone, Defendants should have learned of the conflict through discovery in the Second Action. *Id.* ¶¶ 38-39. Defendants did not inform Plaintiff of the conflict of interest until July 2017. *Id.* ¶ 46. Plaintiff also contends that during their representation in the First and Action Actions, Defendants failed to keep Plaintiff informed about the status of the litigation. *See, e.g.*, *id.* ¶¶ 27-28, 30.

Plaintiff initially filed suit in New Jersey state court, asserting claims for attorney malpractice and common law negligence against Defendants. Defendants removed the matter to this Court on March 23, 2020 and subsequently filed the instant motion to dismiss. D.E. 1, 3. Defendants seek to dismiss the Complaint pursuant to Rule 12(b)(6). D.E. 3.

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of

truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

## III. ANALYSIS

Defendants argue that the Complaint should be dismissed because Plaintiff fails to plead facts demonstrating that Defendants breached any duty or that the purported breach proximately caused any damages to Plaintiff. Legal malpractice is negligence relating to an attorney's representation of a client. *McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001).[3] To state a claim for attorney malpractice, a plaintiff demonstrate "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." *Id.* Defendants do not challenge Plaintiff's allegation that an attorney-client relationship existed. Thus, the Court focuses on whether Plaintiff pleads sufficient facts as to Defendants' breach, proximate cause, and damages.

### A. Breach

Plaintiff alleges that Defendants breached their duty of care by (1) failing to keep Plaintiff informed of developments in the First and Second Actions; and (2) not recognizing that there was a conflict of interest between Plaintiff and HCFM, on the one hand, and Neelendu and Stephanie Bose and entities affiliated with the Boses (the "Bose Parties"), on the other. Plaintiff adds that Defendants failed to inform Plaintiff of this conflict. Plaintiff alleges that through this conduct, Defendants violated the New Jersey Rules of Professional Conduct ("RPCs"). *See* Compl. ¶¶ 74, 93, 111. An attorney's failure to comply with the RPCs "can be considered evidence of

---

[3] The parties have not provided any choice of law analysis and appear to presume that New Jersey substantive law applies to Plaintiff's claim. Accordingly, the Court also applies New Jersey substantive law.

4

malpractice." *Baxt v. Liloia*, 714 A.2d 271, 276 (N.J. 1998) (quoting *Albright v. Burns*, 503 A.2d 386, 390 (N.J. App. Div. 1986)).

Defendants do not address Plaintiff's allegations that they did not keep him reasonably informed throughout the underlying litigation. RPC 1.4(b) provides that a lawyer "shall keep a client reasonably informed about the status of a matter," and RPC 1.4(c) states that a lawyer "shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." N.J.R.P.C. 1.4(b) & (c); *see also Nix v. Verp*, No. A-3179-09T2, 2011 WL 557947, at *3 (N.J. App. Div. Feb. 18, 2011) ("As part of that duty, an attorney is obligated to communicate to his client all information necessary for the client to make informed decisions."). In this instance, Plaintiff pleads, among other things, that Defendants failed to inform him about a settlement conference in the First Action, Compl. ¶ 28; did not consult with Plaintiff before submitting a settlement letter to the magistrate judge in the First Action or before filing certain documents in the Second Action, *id.* ¶¶ 30, 85; and failed to explain the legal significance of certain filings in the underlying matter, *id.* ¶ 91. These allegations are sufficient to establish that Defendants breached their duty as to Plaintiff under RPC 1.4(b) and (c).

Plaintiff also alleges that Defendants breached their duty because they failed to recognize that there was a conflict of interest between the parties. RPC 1.7 addresses conflicts of interests:

> a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a *significant risk* that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]

5

N.J.R.P.C. 1.7(a) (emphasis added).[4] Plaintiff alleges that when Defendants were retained, they should have recognized that a conflict existed due to Horizon's counterclaims. Compl. ¶¶ 25, 62. As discussed, the counterclaims alleged that there was an unlawful scheme to defraud Horizon, based in part, on the submission of improper claims to Horizon. *Id.* ¶ 20. And per HCFM and HC's business arrangement, the Boses (through HC) were responsible for medical billing. *Id.* ¶ 15. Given the fact that the Boses, and not Plaintiff, were responsible for the medical billing, a concurrent conflict of interest existed given the allegations asserted in the counterclaims.

In their reply brief, Defendants argue that Plaintiff fails to state a claim because he only alleges that there was a *potential* conflict of interest when Defendants were retained. Defs. Reply at 1, 3. But RPC 1.7(a)(2) clearly states that a concurrent conflict of interest exists if there is a significant risk that an attorney's ability to represent a client will be limited because of his representation of another client. N.J.R.P.C. 1.7(a)(2). "A conflict need not be obvious or actual; the mere possibility of conflict at the beginning of a relationship is enough to establish an ethical breach." *In re Duke*, 702 A.2d 1008, 1026 (N.J. App. Div. 1995). Consequently, Plaintiff pleads sufficient facts to establish that a concurrent conflict of interest existed pursuant to RPC 1.7(a) when Defendants were retained.

Further, Plaintiff sufficiently alleges that Defendants should have been aware of this conflict when they were retained. First, Defendants had sufficient information to determine that there was a conflict of interest because Horizon's counterclaims were filed before Defendants were retained. Am. Compl. ¶¶ 18, 25. Moreover, Horizon asserted materially similar counterclaims in the Second Action, after Defendants had been retained. *Id.* ¶¶ 33-35, 44. Defendants, however,

---

[4] An attorney may potentially continue to represent a client even if a concurrent conflict of interest exists by obtaining written, informed consent from the client. N.J.R.P.C. 1.7(b). Defendants did not obtain Plaintiff's informed consent in the underlying litigation.

failed to inform Plaintiff of the conflict of interest until almost two years after they were retained. *Id.* ¶ 46. Plaintiff, therefore, pleads sufficient facts to establish that Defendants also breached their duty to Plaintiff due to the alleged violation of RPC 1.7.

### B. Damages

Turning to Defendants' proximate causation and damages arguments, Defendants contend that the Complaint must be dismissed because Plaintiff fails to plead that Defendants' conflict of interest caused his damages. Defs. Br. at 8-9. To properly plead proximate cause, "a plaintiff must allege that the negligent conduct by an attorney was a substantial factor in contributing to his harm." *CCC Atl., LLC v. Silverang*, No. 18-17433, 2019 WL 3334797, at *4 (D.N.J. July 25, 2019). In this instance, Plaintiff alleges that Defendants never informed him that he could assert claims against to the Bose parties,[5] Am. Compl. ¶ 67; and that had he been properly advised, Plaintiff "would not have carried forth with the Second Action," *id.* ¶¶ 101-02. Plaintiff also pleads that because of Defendants' failure to adhere to the RPCs, he suffered actual financial damages and the loss of his medical license. Am. Compl. ¶¶ 59, 75, 95, 114. These allegations sufficiently plead proximate cause and damages.

Defendants also appear to take issue with Plaintiff's failure to specifically allege an amount of damages. Defs. Br. at 9. While Plaintiff must plead that he incurred damages to state a malpractice claim, Plaintiff need to prove an exact number at this stage. *See RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco*, No. 09-431, 2009 WL 2580354, at *10 (D.N.J. Aug. 19, 2009)

---

[5] Defendants argue that the fact that Plaintiff never filed crossclaims against the Bose Parties demonstrates that Plaintiff's allegations are baseless. Defs. Reply at 4. The Court disagrees. There are multiple reasons why a party may not decide to assert claims against another party, even after being informed, such as litigation strategy. As a result, in federal practice, crossclaims are always permissive and never mandatory. *See* Fed. R. Civ. P. 13(g). As a result, the Court places little weight on the fact that Plaintiff never filed crossclaims in the underlying litigation at this stage of the proceedings.

("Plaintiff need not plead or prove 'actual' loss in order to survive a motion to dismiss; instead, it is sufficient that Plaintiff has put Defendants on notice that their alleged legal malpractice has impaired Plaintiff's position and ability to collect its lien in full").  As discussed, Plaintiff alleges that because of Defendants' failure to advise him of the alleged concurrent conflict of interest and to keep him informed about the underlying litigation, he incurred financial damages and lost his medical license.  This level of detail is sufficient at the motion to dismiss stage.

Defendants also "proffer" that Plaintiff voluntarily relinquished his medical license before Defendants were even retained.  Defs. Br. at 9 n. 2.  Moreover, Defendants maintain that "[a]dditional details would crush the unreasonable inference that Segal seeks to draw from the filing of the Second Action," and provides details as to why the Second Action was actually filed. Defs. Reply at 5 n. 1.  In deciding a motion to dismiss, a court ordinarily considers only the factual allegations of the pleading, exhibits attached to the complaint, and matters of public record.  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Here, nothing in the Complaint supports Defendants' allegation as to Plaintiff's medical license.  Moreover, Defendants' allegations regarding the circumstances that led to the Second Action do not appear in the Complaint or in any documents from the underlying proceedings.  As a result, the Court does not consider these arguments at this stage.

In sum, Plaintiff pleads sufficient facts to state the malpractice claims asserted in his Complaint.

Therefore, for the foregoing reasons, and for good cause shown,

IT IS on this 15th day of December, 2020

**ORDERED** that Defendants' motion to dismiss (D.E. 3) is **DENIED**.

_____
John Michael Vazquez, U.S.D.J.